IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

| | | |
|---|---|---|
| CLEMENTE GARCIA-MANCHA, EDUARDO | : | |
| LUIS CONTRERAS-CONTRERAS, ANTONIO | : | |
| HERNANDEZ-HERNANDEZ, BERARDO | : | |
| MARTINEZ-PEREZ, ALEJANDRO | : | |
| MATEO-HERNANDEZ, FELIPE | : | |
| RIVERA-RUBIO, and all others similarly situated, | : | |
| | : | CIVIL ACTION NO. |
|    Plaintiffs, | : | |
| | : | |
| v. | : | _____ |
| | : | |
| HENDRIX PRODUCE, INC.; RAYMON EARL | : | |
| HENDRIX, INDIVIDUALLY; YESENIA | : | |
| MERINO; and JUANA ROJAS, | : | |
| | : | |
|    Defendants. | : | |
| | : | |

## COMPLAINT

## I. PRELIMINARY STATEMENT

1.     Plaintiffs are migrant agricultural workers recruited by Defendants in Mexico in 2007, 2008, and 2009 to work for Defendants in and around Candler County, Georgia.  Plaintiffs file this action on behalf of themselves and other similarly situated workers to secure and vindicate their rights under the Fair Labor Standards Act ("FLSA") and under Georgia contract law.

2.     Plaintiffs left their homes and families and spent considerable money and effort to obtain work visas and travel to Georgia to work for Defendants.

3.     Defendants violated the FLSA by failing to pay each Plaintiff and other similarly situated workers at least the required average minimum hourly wage for every compensable hour

of labor performed in a workweek, including by failing to reimburse their pre-employment expenses as required by law.

4.      Defendants breached Plaintiffs' employment contracts by failing to pay Plaintiffs the contractual minimum wage for all hours worked.

5.      Plaintiffs seek to their unpaid wages, liquidated damages, actual, incidental, consequential, and compensatory damages, and pre- and post-judgment interest.

## II. JURISDICTION AND VENUE

6.      This Court has jurisdiction of this action pursuant to:

   a.      28 U.S.C. § 1331 (Federal Question);

   b.      29 U.S.C. § 1337 (Interstate Commerce);

   c.      29 U.S.C. § 216(b) (FLSA), and

   d.      28 U.S.C. § 1367 (Supplemental).

7.      This Court has supplemental jurisdiction over the state law claims because they are so related to Plaintiffs' federal FLSA claims that they form part of the same case or controversy under Article III, Section 2 of the U.S. Constitution.

8.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and S.D. Ga. Local Rule 2.1(b), because a substantial part of the claims arose in the Southern District of Georgia and because the Defendants reside there.

## III. PARTIES

9.      At all times relevant to this complaint, Plaintiffs were H-2A agricultural guestworkers admitted into the United States to work for Defendants under the auspices of the H-2A program, 8 U.S.C. § 1188 and 20 C.F.R. §§ 655.0 – 655.113 (2008).

10.       Plaintiffs' FLSA consent forms are attached as Exhibit A.

2

11.     At all times relevant to this action, Defendant Hendrix Produce, Inc. ("Hendrix Produce"), was and is a corporation in good standing, duly formed under and in accordance with the laws of the State of Georgia.  Hendrix Produce maintains a principal place of business in Metter, Georgia.

12.     Defendant Hendrix Produce may be served with process through its registered agent, Raymon Earl Hendrix, at 29252 Highway 129 South, Metter, Georgia 30439-0175.

13.     At all times relevant to this lawsuit, Defendant Hendrix Produce provided workers' compensation insurance for the Plaintiffs and other similarly situated workers.

14.     Defendant Raymon Earl ("R.E.") Hendrix ("Hendrix") is the Chief Executive Officer ("CEO") of Hendrix Produce and may be served with process at 29252 Highway 129 South, Metter, Georgia 30439-0175.

15.     Defendant Hendrix's wife, Mary Hendrix, is the CFO and Corporate Secretary of Defendant Hendrix Produce.

16.     Defendant Hendrix is the day-to-day manager of Hendrix Produce and establishes its business practices.

17.     Defendant Hendrix and his wife Mary Hendrix personally own land used by Hendrix Produce to grow crops and to house agricultural workers.

18.     Defendants Hendrix Produce and Hendrix grow, harvest, and pack produce, including Vidalia onions, for sale.

19.     Defendant Yesenia Merino ("Merino") is a farm labor contractor and may be served at P.O. Box 1284 Metter, GA 30439-1284.

20. Defendant Merino was hired by Defendants Hendrix Produce and Hendrix ("Hendrix Defendants") to furnish labor to plant and harvest the Hendrix Defendants' crops as part of the Hendrix Defendants' farming operations.

21. All allegations in this Complaint pertaining to the acts or omissions of Defendant Merino were within the scope of her authority as an agent of, and as such are attributable to, the Hendrix Defendants.

22. Defendant Merino was an employer of Plaintiffs and other similarly situated workers employed under the terms of her job orders, as defined by the FLSA, 29 U.S.C. § 203(d), and the H-2A regulations, 20 C.F.R. § 655.100(b) (2008) and 20 C.F.R. § 655.100(c) (2009).

23. Defendant Rojas is a farm labor contractor and may be served at 219 Emmanuel Circle, Lyons, Georgia 30436.

24. Defendant Rojas is a farm labor contractor hired by the Hendrix Defendants to furnish labor to plant and harvest the Hendrix Defendants' crops as part of the Hendrix Defendants' farming operations.

25. All allegations in this Complaint pertaining to the acts or omissions of Defendant Rojas were within the scope of her authority as an agent of, and as such are attributable to, the Hendrix Defendants.

26. Defendant Rojas was an employer of the Plaintiffs and other similarly situated workers employed under the terms of her job orders, as defined by the FLSA, 29 U.S.C. § 203(d), and the H-2A regulations, 20 C.F.R. § 655.100(b) (2008) and 20 C.F.R. § 655.100(c) (2009).

27. Defendants Hendrix Produce and Hendrix were Plaintiffs' employers as defined by the FLSA, 29 U.S.C. § 203(g), and the H-2A regulations, 20 C.F.R. § 655.100(b) (2008) and 20 C.F.R. § 655.100(c) (2009).

28.    Plaintiffs Clemente Garcia-Mancha, Berardo Martinez-Perez, and Eduardo Luis Contreras-Contreras worked for the Hendrix Defendants and Defendant Merino in Georgia for a three month harvest season in 2007.

29.    Plaintiffs Alejandro Mateo-Hernandez and Felipe Rivera-Rubio worked for the Hendrix Defendants and Defendant Rojas in Georgia for a four month planting season in 2007.

30.    Plaintiff Antonio Hernandez-Hernandez worked for the Hendrix Defendants and Defendant Rojas in Georgia for a three month harvest season in 2008.

31.    Plaintiff Eduardo Luis Contreras-Contreras worked for the Hendrix Defendants Defendant Merino in Georgia for a three month harvest season in 2008.

32.    Plaintiffs Clemente Garcia-Mancha, Berardo Martinez-Perez, and Eduardo Luis Contreras-Contreras worked for the Hendrix Defendants and Defendant Merino in Georgia for a three month harvest season in 2009.

33.    At all times relevant to this Complaint, Defendants Hendrix Produce, Hendrix, Merino, and Rojas were engaged in the harvesting and production of Vidalia onions in Georgia for sale in interstate commerce.

## IV. THE H-2A PROGRAM

34.    The H-2A program was created by 8 U.S.C. §1188 and is implemented pursuant to the regulations found at 20 C.F.R. §§ 655.0-655.113 (2008). The H-2A program authorizes the lawful admission of temporary, non-immigrant workers to perform agricultural labor or services of a temporary nature.  The H-2A regulations were reorganized and amended effective January 18, 2009.  73 Fed. Reg. 77110 (Dec. 18, 2008).

35.    Either the agricultural grower or his crewleader had to file a temporary labor certification application with the appropriate U.S. Department of Labor Regional Administrator.

20 C.F.R. §§ 655.101(a)(1) and (b)(1) (2008). The application had to include a job offer, known as a "job order," that complies with the requirements of 20 C.F.R. §§ 655.102 and 653.501 and is used to recruit both foreign H-2A workers and workers throughout the United States. *See* 20 C.F.R. § 655.101(b) (2008).

36. The H-2A employment contracts at issue here incorporate a regulatory definition of employer found at 20 C.F.R. § 655.100(b) (2008) and 20 C.F.R. § 655.100(c) (2009).

37. In order to be approved by the U.S. Department of Labor an employer must provide workers' compensation insurance. 20 C.F.R. § 655.102(b)(2) (2008) and 20 C.F.R. § 655.104(e) (2009).

38. The terms and conditions of the job order constituted an employment contract between the employer and employee.

39. In each H-2A contract, Defendants promised to abide by the DOL regulations at 20 CFR Part 655. *See* Exs. B-E at Attachment to ETA 790, Section 2 ("Assurances"); Ex. F at ETA 790 Continuation, Item 5.

40. In each H-2A contract, Defendants promised to "keep and maintain adequate and accurate payroll and supporting records" in accordance with the provisions of 20 C.F.R. § 655.102(b)(7) (2008) and 20 C.F.R. § 655.104(j). *See* Exhibits B-E at Attachment to ETA 790, Section 1(H) ("Records, Earnings Statement and Deductions"); Ex F at ETA 790 Continuation, Item 10.

41. For each H-2A contract, Defendants promised that each worker would earn at least the prevailing rate for the crop activity or at least the adverse effect wage rate (known as the "AEWR"), whichever is higher, for all hours worked in the payroll period. *See* Exs. B-E at Attachment to ETA 790, Section 1 (I) ("Rates of Pay"); Ex. F at ETA 790 Continuation, Item 11.

42.     In 2007-2008, the "Adverse Effect Wage Rate," or "AEWR," was the weighted average hourly wage for field and livestock workers for the region as established each year by the US DOL and published annually in the Federal Register.  20 C.F.R. § 655.107(a) (2008).

43.     In 2009, the AEWR was a minimum of the upcoming federal minimum wage or the Bureau of Labor Statistics (BLS), Occupational Employment Statistics (OES) survey findings for the occupation, skill level and region.  20 C.F.R. § 655.108(e) (2009).

44.     The harvest 2007 and planting 2007, and the harvest 2008 employment contract promised to pay the applicable AEWR, which was $8.51 per hour.  Exs. B-E, Attachment to ETA 790 at § (1) (I).

45.     The 2009 employment contract promised to pay the applicable AEWR, and listed $7.25 per hour.  Ex. F, ETA 790 at Item No. 11 "Wage Rates, Special Pay Information and Deductions" (showing hourly wage of $7.25 for harvest, clipping, and dumping of onions).

46.     The Plaintiffs' employment contracts required Defendants to supplement Plaintiffs' pay when Plaintiffs were "paid on a piece rate basis and the piece rate does not result at the end of the pay period in average hourly piece rate earnings during the pay period at least equal to the amount the worker would have earned had the worker been paid at the appropriate hourly rate."  The Plaintiffs' earnings were promised to be "at least as much as the worker would have earned during the pay period if the worker had been paid at the appropriate hourly wage rate for each hour worked." 20 C.F.R. § 655.102(b)(9)(ii)(A) (2008) and 20 C.F.R. § 655.104(l)(2)(i) (2009).

47.     Plaintiffs' employment contracts expressly incorporated these terms through the promise to abide by the assurances of 655, subpart B.  Exs. B-E Attachment to ETA 790 at Section 1(I); Ex. F ETA 790 Continuation at Item 11 ("Workers are guaranteed that their total

7

earning will be at least the prevailing rate for the crop activity or at least the AEWR; whichever is higher, for all hours worked in the payroll period").

48.     For each H-2A contract, Defendants were required to promise to "comply with the applicable federal, state, and local employment-related laws and regulations," including the Fair Labor Standards Act. *See* Exhibits B-E ("Assurances"); 20 C.F.R. § 655.103(b) (2008) and 20 C.F.R. § 655.105(e)(1) and § 655.108 (a) (2009).

## V. STATEMENT OF FACTS

### 2007 Seasons

49.     The Hendrix Defendants engaged the services of Defendants Merino and Rojas to furnish harvest labor to pick Defendants' crops in their farming operations for the 2007 harvest and planting seasons.

50.     Defendant Merino filed job order number GA 7561017 ("job order"), proposing to employ 60 H-2A workers for the period April 1, 2007 through June 15, 2007. A copy of this job order is attached as Exhibit B.

51.     In the "Agricultural Work Agreement" that is part of the job order, the Place of Work of Employer lists the address of Defendant Hendrix Produce. Ex. B at 17.

52.     The job order attached as Exhibit B contains a letter from Defendant Hendrix stating Defendant Hendrix Produce's intent to hire workers pursuant to job order GA 7620298 to clip onions. Ex. B at 7.

53.     Plaintiffs Clemente Garcia-Mancha and Eduardo Luis Contreras-Contreras were employed under the terms of this job order.

54.     Defendant Rojas filed job order number GA 7620298 ("job order"), proposing to employ 84 H-2A workers for the period October 20, 2007 to January 15, 2008. A copy of this job order is attached as Exhibit C.

55.     In the "Agricultural Work Agreement" that is part of the job order, the Place of Work of Employer lists the name, address, and phone number of Defendant Hendrix Produce. Ex. C at 17.

56.     The job order attached as Exhibit C contains a letter from Defendant Hendrix stating Defendant Hendrix Produce's intent to hire workers pursuant to job order GA 7620298 to plant onions. Ex. C at 6.

57.     Plaintiffs Alejandro Mateo-Hernandez and Felipe Rivera-Rubio were employed under the terms and conditions of this job order.

<u>2008 Season</u>

58.     The Hendrix Defendants engaged the services of Defendants Merino and Rojas to furnish harvest labor to pick Defendants' crops in their farming operations for the 2008 harvest season.

59.     Defendant Merino filed job order number GA 7656129 ("job order"), proposing to employ 60 agricultural workers for the period March 25, 2008 through June 10, 2008.  A copy of this job order is attached as Exhibit D.

60.     In the "Agricultural Work Agreement" that is part of the job order, the Place of Work of Employer lists the address of Defendant Hendrix Produce. Ex. D at 17.

61.     The job order attached as Exhibit D contains a letter from Defendant Hendrix submitted a letter stating Defendant Hendrix Produce's intent to hire workers pursuant to job order GA 7656129 to harvest onions.  Ex. D at 7.

62.     Plaintiff Eduardo Luis Contreras-Contreras was employed under the terms of this job order.

63.     Defendant Rojas filed job order number GA 7657092 ("job order"), proposing to employ 84 agricultural workers from March 17, 2008 through June 10, 2008.  A copy of this job order is attached as Exhibit E.

64.     In the "Agricultural Work Agreement" that is part of the job order, the Place of Work of Employer lists the name and address of Defendant Hendrix Produce. Ex. E at 17.

65.     The job order attached as Exhibit E contains a letter from Defendant Hendrix submitted a letter stating Defendant Hendrix Produce's intent to hire workers pursuant to job order GA 7657092 to harvest onions.  Ex. E at 7.

66.     Plaintiffs Antonio Hernandez-Hernandez, Alejandro Mateo-Hernandez, and Felipe Rivera-Rubio were employed under the terms and conditions of this job order.

<u>2009 Season</u>

67.     The Hendrix Defendants engaged the services of Defendant Merino to furnish labor to harvest Defendants' crops in their farming operations for the 2009 harvest season.

68.     Defendant Merino filed job order number GA 7753664 ("job order"), proposing to employ 100 agricultural workers from April 10, 2009 through July 10, 2009.  A copy of this job order is attached as Exhibit F.

69.     In the "Agricultural Work Agreement" that is part of the job order, the Place of Work of Employer lists the name and address of Defendant Hendrix Produce. Ex. F at 11.

70.     Plaintiffs Eduardo Luis Contreras-Contreras and Clemente Garcia-Mancha were employed under the terms of this job order.

71.     Defendant Rojas filed job order GA 7750111 ("job order"), proposing to employ 104 agricultural workers from March 25, 2009 through June 15, 2009.  A copy of this job order is attached as Exhibit F.

72.     In the "Agricultural Work Agreement" that is part of the job order, the Place of Work of Employer lists the name and address of Defendant Hendrix Produce. Ex. F at 11.

### Recruitment, Hiring, and Expenses of Plaintiff Workers

73.     Defendants through their agents recruited the Plaintiffs in Mexico with employment offers to harvest onions in Georgia.

74.     Defendants subsequently ratified this recruitment by employing the Plaintiffs to plant and harvest their crops during the 2007, 2008, and 2009 seasons.

75.     The Plaintiffs accepted the employment offer by signing up with agents of the Defendants in Mexico.

76.     Plaintiffs were required to pay visa and processing fees to Defendants' agents in Mexico, including Esmeralda Ortiz, to secure an offer of employment with Defendants.

77.     Plaintiffs and other similarly situated workers incurred various immigration and travel-related expenses in order to come to work for Defendants' operations in Georgia.

78.     Plaintiffs paid, at their own expense, visa and processing fees in excess of $200 in order to obtain the H-2A visa.

79.     Plaintiffs were required to pay, at their own expense, a visa reciprocity fee of at least $100, which was required to obtain the H-2A visa.

80.     Plaintiffs and other similarly situated workers were required to purchase, at their own expense, passports necessary to obtain an H-2A visa.

11

81.     In order to comply with the Defendants' hiring processes, the Plaintiffs and other similarly situated workers traveled, at their own expense, from their homes in the Mexican states of Hidalgo, San Luis Potosi, Guanajuato and Queretaro to the U.S. Consulate in Monterrey, Nuevo Leon, Mexico for the consular interview necessary to obtain an H-2A visa.

82.     Plaintiffs' travel expenses from their home states to Monterrey exceeded $35.

83.     Plaintiffs incurred expenses for lodging and subsistence in Monterrey while they completed a visa application form, attended a consular interview, and waited for their visa applications to be processed and for their visas to be issued.

84.     Following the issuance of the H-2A visas, Plaintiffs boarded a bus and paid their own travel expenses from Monterrey, Mexico, to Defendants' operations in Georgia.

85.     For each year they participated in a contract, Plaintiffs each paid a $6 fee for the issuance of the Customs and Border Patrol Form I-94 required to enter the U.S.

86.     Plaintiffs were required to pay their own subsistence expenses during their journey from their homes in Mexico to Defendants' operations in Georgia.

87.     The expenditures set out in paragraphs 76 through 86 were primarily for the benefit of the Defendants within the meaning of 29 C.F.R. §§ 531.32(c) and 778.217.

88.     The expenditures set out in paragraphs 76 through 86 were made before receipt of Plaintiffs' first paychecks in each contract period in which they worked.

89.     Defendants failed to reimburse Plaintiffs during the first workweek for the costs described in paragraphs 76 through 86, resulting in Plaintiffs' first week wages falling well below the minimum wage.

90. Defendants did not reimburse Plaintiffs at the 50 percent point of Plaintiffs' work period for all inbound transportation to Georgia and subsistence expenses not previously reimbursed as required by their employment contracts.

91. The Plaintiffs were employed by the Hendrix Defendants to plant and harvest onions for their farming operation—a repetitive, rote task that requires little training.

92. Hendrix Defendants directed and controlled the terms and conditions of Plaintiffs' employment by directing the dates and time of Plaintiffs' work and directing which fields the Plaintiffs' were to harvest.

93. Hendrix Defendants directed and controlled the terms and conditions of Plaintiffs' employment by determining the amount of Plaintiffs' pay through the amounts paid to Defendants Merino and Rojas.

94. Plaintiffs worked upon farmland and resided in barracks owned or controlled by the Hendrix Defendants.

95. Upon information and belief, the Hendrix Defendants undertook responsibilities in relation to the Plaintiffs that employers commonly perform, including providing tools, equipment, and materials necessary for Plaintiffs' work.

96. Plaintiffs did not receive payment for all compensable hours worked as required by the FLSA and the Plaintiffs' H-2A employment contract.

97. Defendants often paid Plaintiffs on a piece-rate basis, such that Plaintiffs were paid according to the amount of crops they harvested without regard to the number of hours they worked.

98. Defendants intentionally manipulated Plaintiffs' hours recorded on their paychecks so as to conceal their failure to pay Plaintiffs for all hours worked.

99.     In some weeks, Plaintiffs' weekly piece-rate earnings fell below the applicable federal minimum wage.

100.    In some weeks, Plaintiffs' weekly piece-rate earnings fell below the applicable AEWR.

101.    Upon information and belief, Defendants did not supplement Plaintiffs' weekly earnings to ensure that Plaintiffs' wages met the FLSA minimum hourly wage or the minimum hourly wage set forth in the Plaintiffs' H-2A employment contracts.

102.    Defendants' failure to make payment for all compensable hours worked resulted, in part, from Defendants' illegal deductions from Plaintiffs' paychecks, including deductions for tools necessary to perform the job and for refusing to work on Sundays.

103.    Defendants failed to make, keep, preserve, and retain accurate employment records as required by the FLSA, 29 U.S.C. § 211(c), and the H-2A regulations, 20 C.F.R. § 655.102(b)(7) (2008).

104.    Defendants failed to regularly provide Plaintiffs with accurate paystubs with the information required by 20 C.F.R. §§ 655.102(b)(7)-(8) (2008).

105.    Defendants knew or showed reckless disregard for their FLSA obligations.

**COUNT I**

**FAIR LABOR STANDARDS ACT**

106.    Plaintiffs incorporate each of the allegations contained in paragraphs 1 through 105 above by reference.

107.    This Count sets forth a claim by Plaintiffs and others similarly situated for damages for Defendants' violations of the FLSA pursuant to 29 U.S.C. § 216 (b).

108.    As detailed in paragraphs 96 through 102 above, Defendants failed to pay Plaintiffs, and others similarly situated, at least the required average minimum hourly wage for every compensable hour of labor performed in a workweek, as required by 29 U.S.C. § 206(a).

109.    The violations of the FLSA resulted, in part, from Defendants' failure to reimburse expenses as detailed in paragraphs 76 through 90 above, which Plaintiffs incurred primarily for the benefit or convenience of Defendants prior to Plaintiffs' first week of work. When these expenses were subtracted from the Plaintiffs' first week's pay, as required by law, Plaintiffs' earnings were near or below zero, and fell well below the required average minimum hourly wage for that pay period as detailed in paragraph 89, above.

110.    The violations set forth in this Count resulted, in part, from Defendants' practice of paying Plaintiffs based on the quantity of the produce harvested without regard to the number of hours Plaintiffs worked, as detailed in paragraphs 97 through 101, above.

111.    The violations set forth in this Count also resulted, in part, from Defendants' failure to pay Plaintiffs for all hours worked as described in paragraphs 96 through 101, above.

112.    Pursuant to 29 U.S.C. § 216(b), as a result of Defendants' violations of the FLSA set forth in this Count, Plaintiffs are entitled to recover the amount of their unpaid wages and an equal amount as liquidated damages for each workweek in which they were suffered or permitted to work at Defendants' operations and during which they earned less than the applicable minimum wage.

113.    Defendants' violations set out in this Count were willful within the meaning of FLSA.

## COUNT II

### BREACH OF CONTRACT

15

114.   Plaintiffs incorporate each of the allegations contained in paragraphs 1 through 105 above by reference.

115.   This Count sets forth a claim by Plaintiffs for damages for Defendants' breach of the "rate of pay" provisions of the Plaintiffs' H 2A employment contracts, as described in paragraphs 96 through 101, above.

116.   Defendants, through their agents, offered employment on the terms and conditions set out in the 2007, 2008, and 2009 job orders as described in paragraphs 34 through 48, above.

117.   Plaintiffs accepted Defendants' offer.

118.   Defendants breached the Plaintiffs' H 2A employment contracts by failing to pay the Plaintiffs the applicable AEWR, as described in paragraphs 96 through 101, above.

119.   As a direct consequence of Defendants' breach of the Plaintiffs' H 2A employment contract, Plaintiffs suffered economic injury.

120.   Defendants are liable to Plaintiffs for the damages that arose naturally and according to the usual course of things from Defendants' breach, as provided by federal common law and/or O.C.G.A. § 13-6-2, including unpaid wages, damages arising from the delay, and prejudgment interest.

## PRAYERS FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court grant them the following relief:

(a)   Under Count I:

1.   Declare that Defendants have willfully violated the FLSA as specified above in paragraphs 105 above;

2.     Grant judgment against Defendants and in favor of each Plaintiff and opt-in

Plaintiff in the amount of his respective unpaid wages as proved at trial, plus an

equal amount in liquidated damages, pursuant to 29 U.S.C. § 216(b);

3.     Award Plaintiffs their attorneys' fees pursuant to 29 U.S.C. § 216(b).

(b)     Under Count II:

1.     Declare that Defendants have breached their employment contracts with Plaintiffs

as specified in paragraphs 90; 96 through 105, above;

2.     Grant judgment against Defendants and in favor of each Plaintiff, in the amount

of Plaintiffs' damages as arose naturally and according to the usual course of

things from such breach and such as the parties contemplated, when the contract

was made, as the probable result of such breach;

(d)     Award Plaintiffs pre- and post-judgment interest as allowed by law;

(e)     Cast all costs upon Defendants; and

(f)     Award Plaintiffs such further relief, at law or in equity, as this Court deems just and

proper.

Respectfully submitted this 16th day of April, 2010,

/s/ Dawson Morton
Dawson Morton
Georgia Bar No. 525985
Rebecca Miller
Georgia Bar No. 489898
Lisa J. Krisher
Georgia Bar No. 429762
104 Marietta Street NW, Suite 250
Atlanta, GA  30303
Phone:  (404) 463-1633
Fax:      (404) 463-1623

*Attorneys for Plaintiffs*